IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ENZO DI LORETO,                                    )        CASE NO.  1:22-CV-1404-JDG
                                                   )
                 Plaintiff,                        )
                                                   )
        vs.                                        )        MAGISTRATE JUDGE
                                                   )        JONATHAN D. GREENBERG
                                                   )
KILOLO KIJAKAZI                                    )
ACTING COMMISSIONER OF                             )        **MEMORANDUM OF**
SOCIAL SECURITY,                                   )        **OPINION AND ORDER**
                                                   )
                 Defendant.                        )
                                                   )

        Plaintiff, Enzo Di Loreto ("Plaintiff" or "Di Loreto"), challenges the final decision of

Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), denying his

application for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act,42

U.S.C. § 423 ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the

parties, pursuant to 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final

decision is AFFIRMED.

## I.        PROCEDURAL HISTORY

        In January 2020, Di Loreto filed an application for DIB.  (Transcript ("Tr.") 219-225)  His

application alleged a disability onset date of December 24, 2014, and claimed he was disabled due to a

stomach ulcer and problems with his right shoulder, right knee, lower back, and neck . (Tr. 127)  Di

Loreto's application was denied initially and upon reconsideration, and Di Loreto requested a hearing

before an administrative law judge ("ALJ").  (Tr. 147-51, 154-57, 164).

        On July 27, 2021, ALJ George Roscoe held an online video hearing during which Di Loreto,

represented by counsel and assisted by an Italian interpreter, and an impartial vocational expert ("VE"),

1

David Salwesky, testified.  (Tr. 30-44).  On August 4, 2021, the ALJ issued a written decision finding Di Loreto was not disabled.  (Tr. 10-29).  The ALJ applied *res judicata* and dismissed the portion of the request from hearing from December 24, 2014, the onset date to January 28, 2019, the date of the previous ALJ denial. (Tr. 14, 33) Thus, the period at issue is from January 29, 2019, through August 4, 2021, the date of the ALJ decision at issue. The ALJ' s decision became final on June 14, 2022, when the Appeals Council declined further review.  (Tr. 1-6)

On August 9, 2022, Di Loreto filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1)  The parties have completed briefing in this case. (Doc. Nos. 8, 10)

Di Loreto asserts the following assignments of error:

> `(1) Whether the ALJ committed reversible error in not finding persuasive the opinion of the consultative examiner, Dr. Uche Davidson.

> (2) Whether the ALJ committed reversible error in not finding persuasive the opinion of the physical therapist, William J. Grospitch.

(Doc. No. 8 at 1).

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Di Loreto was born in 1966 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured.  (Tr. 27)  *See* 20 C.F.R. §§ 404.1563(c). He has at least high school education from Italy and reads, writes, speaks, and understands fluent Italian.  (*Id.*)

### B.    Relevant Medical Evidence[1]
### 1.    Treatment Notes prior to January 29, 2019

---

[1] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

2

Di Loreto treated with Reichenbach Chiropractic in 2014 and 2015. (Tr. 376-78)  Di Loreto

returned for one visit in February 2018. (Tr. 378)

In March 2018, Di Loreto treated with Deborah Torres, PA-C (PA) due to neck pain. (Tr. 368) Di

Loreto reported continued neck discomfort that had not improved since his last visit in March 2017.

(Id.) Di Loreto also reported numbness and tingling in his hands and feet, difficulty holding objects,

low back pain with difficulty bending, and sleep disturbances due to pain. (Id.)  Di Loreto stated his

pain was intermittent and increased with standing, lying down, squatting, and weather. PA Torres

described Di Loreto as "very fit" and noted that he performed exercise daily but had been reducing

activity due to discomfort. (Id.) PA Torres also noted that Di Loreto had not undergone any recent

assessment or conservative management of his symptoms. (Id.) PA Torres referred Di Loreto for a x-

rays and an MRI. She suspected spondylosis, cervical, with radiculopathy.  (Tr. 369)

A June 2018 MRI of the cervical spine found multilevel degenerative changes of the cervical spine,

most pronounced at C6-7 and small disc herniations at C5-6 and C4-5, with slight interval progression

at C5-6. (Tr. 373) A September 2018 MRI of the left knee showed anterior cruciate ligament and

mucoid degeneration with intra cruciate ganglion and pericruciate synovitis; patellofemoral arthritis

with grade III chondral loss lateral trochlear groove and grade II chondral loss median patellar ridge;

foci grade II chondral loss medial femoral condyle; moderate knee effusion; and mildly degenerative

superior tibiofibular articulate. (Tr. 394) A September 2018 EMG and nerve conduction revealed

bilateral carpal tunnel syndrome, moderate right ulnar compression neuropathy, and underlying

peripheral neuropathy, no cervical radiculopathy, and no myopathy. (Tr. 486) An x-ray of the spine

showed mild degenerative disc disease most pronounced at L3-4 through L5-S1, but no change in the

findings since previous imaging was performed on February 15, 2017. (Tr. 486) On October 2018, at a

visit to discuss Di Loreto's imaging results, Di Loreto stated he did not want to pursue treatment for his

neck or low back pain. (Id.) He stated he had injections in the past, and would consider future injections if pain started to flare. (Id.) Di Loreto reported that he was working with Dr. Keppler for knee pain management and would focus on that for the time being. (Id.)

### 2. Treatment notes from January 29, 2019, to December 31, 2020

In March 2019, Di Loreto returned to Reichenbach Chiropractic and was treating with Dr. Keppler's office for complaints of low back and knee pain with limited knee flexion. (Tr. 378, 389) Lisa Schnell, PA noted that Di Loreto had a large effusion on his right knee on examination. (Id.) PA Schnell removed fluid from Di Loreto's knee, administered a cortisone injection, and recommended an MRI. (Id.) Di Loreto reported that he engaged in a home exercise program and swam 3-4 times a week, but had held off on his activity due to his pain. (Id.) Six days later, Di Loreto had an MRI of his right knee revealing mild chondromalacia patella with partial-thickness cartilage loss and partial thickness chondral fissures; some trochlear cartilage loss which was characterized by full-thickness chondral defect; some partial-thickness cartilage loss and full thickness fissures over the medial femoral condyle; some small edge radial tears over the lateral meniscal body; some small osteochondral bodies lateral to the lateral tibial plateau periphery and anterior to the anterior horn of the lateral meniscus; and moderate sized joint effusions. (Tr. 392-93) On March 25, 2019, Roman Hanycz, PA met with Di Loreto to review the MRI. (Tr. 388) PA Hanycz reported that there was some small edge radial tearing over the lateral meniscal body, but no evidence of a ligament tear. (Id.) PA Hanycz also reported that the knee had a moderate-sized joint effusion, and that knee flexion was adequate. (Id.) PA Hanycz told Di Loreto to return a week prior to his upcoming vacation to Mexico if he had a flare requiring a steroid injection. (Tr. 388) Di Loreto returned to PA Hanycz on April 22, 2019 asking for aspiration. (Tr. 387) PA Hanycz and Dr. Keppler examined Di

4

Loreto's knee and felt there was not enough effusion to aspirate. (Id.) Di Loreto was provided a prescription for a non-steroidal anti-inflammatory drug, Duexis, to get him through his trip. (Id.) He was told to follow up as needed after he came back from Mexico. (Id.)

On May 30, 2019, Di Loreto reported to his primary care physician, Giuseppe Antonelli, that he could not stand for a long time and was having trouble sleeping. (Tr. 349)  On January 6, 2020, Di Loreto reported her was sleeping well and had an improved mood after taking Duloxetine. (Tr. 353) Throughout 2020, Dr. Antonelli diagnosed Di Loreto with cervical and lumbar spondylosis, osteoarthritis of the knees, gastritis, and depression with chronic pain. (Tr. 354, 419, 421) Di Loreto reported to Dr. Antonelli on July 8, 2020 that even though the Duloxetine was helping, he still experienced neck, lower back, and knee pain. (Tr. 420). An examination revealed tenderness of the cervical and lumbar spine. (Id.)

### 3. Treatment Notes after December 31, 2020

Di Loreto returned to Dr. Antonelli on March 10, 2021, and was feeling confused and depressed, and reported problems with his knees, neck and low back. (Tr. 493) Later that month, Di Loreto reported to Dr. Antonelli that he was feeling a little better with his increased Duloxetine. (Tr. 497). Mr. Di Loreto was nervous, had no energy, his pain extended down the left neck and leg, and he had decreased sleep. (Id.) Dr. Antonelli diagnosed fatigue, depression, sleep disturbance, cervical and lumbar spondylosis, osteoarthritis of the knees, and hypothyroidism. (Id.) In June 2021, Di Loreto reported increased left knee and lower back pain after he fell down his basement stairs. (Tr. 499) On examination he limped, had diffuse lumbar spine tenderness, and left knee tenderness. (Id.) Dr. Antonelli ordered x-rays, which found mild osteoarthritis of the left knee and mild multilevel lumber degenerative change with no acute findings. (Tr. 501-02, 508-09).

### 4. Medical Opinions

5

*Consultative Examination - Dr. Davidson*

On July 11, 2020, Mr. Di Loreto attended a consultative examination by Uche Davidson, MD, on behalf of the state agency. (Tr. 428). Di Loreto reported symptoms of pain in the neck, knee, back, shoulders, wrist, and hands, pain in the stomach due to ulcers, and numbness in his fingers at times (Id.) His symptoms were relieved when lying down and it was noted that physical therapy and medication treatment had helped in the past. (Id.) Di Loreto reported daily activities of cooking, light housework, washing dishes, and caring for pets. (Tr. 429) He stated that his pain was a 10/10 most days and was a 7/10 on the day of the exam. (Tr. 428)

On examination, Di Loreto had an asymmetric, slow, antalgic, limping gait. (Tr. 431)  Di Loreto wore a right knee brace and left wrist brace which "severely limit[ed] is ability to get in and out of the examination table. (Tr. 432) He had a positive compressive test on the left wrist that Dr. Davison reported was "potentially concerning for carpal tunnel syndrome." (Id.) Di Loreto was able to lift, carry, and handle light objects and his fine and gross manipulative abilities were "grossly normal." (Tr. 431) Di Loreto was able to complete some activities but with difficulty such as squatting and rising, getting up and down from the exam table, and walking on heels. Di Loreto could not walk on his toes or stand/hop on one foot. (Id.) His tandem walking was also noted as abnormal. (Id.) Di Loreto had a "negative straight leg raise. No Hoffman. No Babinski." (Tr. 432) Di Loreto had tenderness to palpitation on his right knee and left paraspinal cervical spine region. (Id.) Dr. Davidson stated that Di Loreto was cooperative and put forth good effort during the testing. He did not review any of Di Loreto's medical records. (Tr. 431)

Dr. Davidson opined that Di Loreto had no sitting limitations; moderate limitations in standing and walking due to neck and right knee pain; severe limitations with lifting due to neck and knee pain and carrying weight due to left hand numbness and tingling; could only

6

occasionally bend, stoop, crouch, and squat and Di Loreto could grasp, handle, finger, and feel

on occasion. (Tr. 431) Dr. Davidson stated that there were "no relevant visual, communicative,

or workplace environmental limitations. (Id.)  Dr. Davidson recommended x-rays and further

evaluation "to understand how the overall limitations…play a role in limiting his ability to

perform his work related activities." (Id.)

*State Agency Review – Initial & Reconsideration*

In September 2020, Elizabeth Das, M.D., a state agency physician, reviewed Di Loreto's

records and opined that Di Loreto was limited to occasional lifting, carrying, pushing and pulling 20

pounds; frequent lifting, carrying, pushing, and pulling 10 pounds; standing and/or walking six hours

in an eight-hour workday; and sitting for six hours in a workday (Tr. 132).[2] Dr. Das also opined that

Di Loreto could frequently balance; occasionally climb stairs/ramps, stoop, kneel, crouch, and crawl;

never climbing ladders, ropes, or scaffolds; and  reach overhead occasionally with his right arm (Tr.

132-33). Abraham Mikalov, M.D., another State agency physician, reviewed the record at the

reconsideration stage in December 2020, and affirmed the opinion of Dr. Das. (Tr. 141-42)

*Functional Capacity Assessment – PT William Grospitch*

In July 2021, Di Loreto completed a Functional Capacity Assessment with physical

therapist William Grospitch. (Tr. 510). Grospitch opined that Di Loretto could occasionally lift

up to 25 lbs floor to waist, 15 lbs waist to shoulder, 15 lbs floor to shoulder, carry up to 25 lbs;

push 25 lbs; and pull 40 lbs. (Id.) Grospitch also opined that Di Loreto could perform frequent

sitting, standing, walking, stair climbing, crouching, reaching to floor level, stooping, climbing

ladders, reaching at desk level, reaching overhead, bilateral fingering/fine motor, and bilateral

simple and firm grasping. (Id.) Grospitch noted the following deficits during testing: an antalgic

---

[2] As the Commissioner notes, Dr. Das's opined exertional limitations are consistent with the agency's definition of "light work." Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

gait pattern while walking, increased lumbar extension when attempting to place objects at shoulder height, increased pain in bilateral knees with stair climbing and lifting floor to waist, and difficulty due to decreased range of motion and strength on the knee with retro cart pull. (Id.) It was also noted that Di Loreto required frequent rest breaks due to lumbar paraspinal fatigue and increased bilateral knee pain. (Id.) While Grospitch concluded that testing placed Di Loreto in the light exertional level, Grospitch stated that he did not believe that Mr. Di Loreto would be able to "tolerate a full work day and especially multiple full work days in succession." (Id.)  Di Loreto reported his current pain level as 0 but noted that it ranged from 0-7 over the last 48 hours. (Tr. 512) Di Loreto drove to/from the appointment and reported needing minimal assistance with activities of daily living, but noted that his wife helps him as needed when pain is increased. (Id.)

## C.    Hearing Testimony

Di Loreto testified to the following at the  July 27, 2021, hearing:

- He has been unable to work since a 2015 surgery.  His knee, back, and shoulder pain have gotten worse through the years. He takes Ibuprofen and Tylenol for pain. Di Loreto received some chiropractic care that helped "a little bit."  Di Loreto stated that he has difficulty with his hands, causing him to drop things.  He sleeps on a sofa or chair to prevent his extremities from falling asleep at night. He stated he can only sit for 15-20 minutes before pain requires him to change position.  He also stated he could only stand or walk for 10-15 minutes before experiencing knee pain that requires him to sit down. He stated that he is most comfortable laying down, but not completely flat, with his head raised. Di Loreto stated he was depressed because he could no longer work.

- Di Loreto testified that he spends a typical day sitting in his chair outside for about 15 minutes, then walking to a nearby store and back home. He said he can make himself simple foods, like sandwiches, but his wife completes most chores and helps him bathe and get dressed. Di Loreto stated that he had trouble sleeping through the night.  He also stated he took a 1.5-2 hour nap each day in the afternoon.

(Tr. 34-40 )

8

VE, David Salwesky, also testified at the hearing. (Tr. ). The ALJ posed two hypothetical scenarios to the VE about whether a hypothetical individual of Di Loreto's age, education, and ability to write, speak and understand Italian, with limited English speaking. (Ruling 20-1p) could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1.    Light work: no climbing of ladders ropes, scaffolds, or crawling; frequent pushing and pulling with the upper extremities, operating hand controls, handling and fingering; occasional overhead reaching without limited lateral reaching, stooping, kneeling and crouching; and no exposure to hazards like heights, machinery, and commercial driving. (Tr. 40-41)
- The VE testified that the following jobs would be available: garment sorter, housekeeping, price marker. (Tr. 41-42)

2.    The ALJ then added to hypothetical #1 that the individual would be off task at least 20 percent of the time. (Tr. 42.)
- The VE testified that there would be no jobs available (Id.)

Di Loreto's counsel then questioned the VE to assume an individual in the ALJ's first hypothetical but add that the individual could only occasionally reach, grasp, handle, and finger. (Tr. 43) The VE testified no jobs would be available for that individual. Di Loreto's counsel then asked whether it would be light or sedentary work if the VE assumed the individual in the first hypothetical also could only stand and walk for two hours out of an eight-hour day. (Id.) The VE responded that the additional limitation would shift the individual down to sedentary work. (Id.)

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a). The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir.

2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that

he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20

C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe

impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A

"severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work

activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity,

has a severe impairment that is expected to last for at least twelve months, and the impairment, or

combination of impairments, meets or medically equals a required listing under 20 CFR Part 404,

Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work

experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or

combination of impairments does not prevent him from doing his past relevant work, the claimant is not

disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the

claimant's impairment does prevent him from doing his past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§

404.1520(g), 404.1560(c), *and* 416.920(g).

#### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on
      December 31, 2020.

2.    The claimant did not engage in substantial gainful activity during the period from his
      alleged onset date of December 24, 2014, through his state last insured of December 31,
      2020 (20 CFR 404.1571 *et seq*).

3.    Through the date last insured, the claimant had the following severe impairments:
      degenerative changes of the cervical and lumbosacral spine, with spondylosis; and
      chondromalacia, with mild denigrative changes of the bilateral patellae (20 CFR
      404.1520(c)).

10

4.      Through the date last insured, the claimant does not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545) to perform light work as defined in 20 CFR 4104.1567(b), except for no climbing of ladders, ropes or scaffolds, or crawling; frequent pushing/pulling with the upper extremities, limited lateral reaching, stooping, kneeling and crouching; and no exposure to hazards (heights, machinery, commercial driving). The claimant does not have severe mental limitations (20 CFR 404.1569a).

6.      Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7.      The claimant was born in 1966, and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education from Italy and reads, writes, speaks, and understands Italian fluently (20 CFR 404.1564, SSR 20-1p).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.     Though the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, at any time from December 24, 2014, through December 31, 2020, the last date insured (20 CFR 416.920(g)).

(Tr. 16-24)

## V.      STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)."  *Reynolds v. Comm'r of Soc. Sec*., 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal

standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v.Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.    ANALYSIS

Di Loreto presents two assignments of error for the courts review. Both assignments of error involve the ALJ's treatment of medical opinions. Di Loreto argued that the ALJ erred in his treatment of the following medical opinions:  (1) Consultative Examiner – Dr. Uche Davidson; and (2) Physical Therapist – William Grospitch.

### A.    CE Opinion

First, Di Loreto argues that the ALJ erred in his evaluation of the Consultative Examiner, Dr. Uche Davidson.  Doc. No. 8 at 11-14.  Di Loreto asserts that, contrary to the ALJ's finding, Dr. Davidson's opinion was supported by objective medical evidence. Id. The Commissioner asserts that the ALJ's treatment of Dr. Davidson's opinion is supported by substantial evidence.  Doc. No. 10 at 13.

On July 11, 2020, Di Loreto attended a consultative examination by Uche Davidson, MD, on behalf of the state agency. (Tr. 428) Dr. Davidson opined that Di Loreto had no sitting limitations; moderate limitations in standing and walking due to neck and right knee pain; severe

13

limitations with lifting due to neck and knee pain and carrying weight due to left hand numbness and tingling; could only occasionally bend, stoop, crouch, and squat and Di Loreto could grasp, handle, finger, and feel on occasion.(Id.) The ALJ determined that Dr. Davidson's opinion was not fully persuasive and stated the following:

> The claimant presented for a consultative physical examination performed by Uche Davidson, MD, on July 11, 2020. Based on the one-time examination, including subjective input from the claimant, the consultative examining physician opined the claimant had "moderate" limitations with standing due to neck and right knee pain. The claimant had "moderate" limitations with walking due to neck and right knee pain. The claimant did not need an assistive device with regard to short distances but does needs one (cane) for long distances and uneven terrain. The claimant had "severe" limitations with lifting due to neck and right knee pain. The claimant had "severe" limitations with carrying weight due to left hand numbness and tingling. There were limitations with bending, stooping, crouching and squatting and the claimant will be able to perform these occasionally due to neck and right knee pain. There were limitations with reaching and the claimant will be able to perform this occasionally due to neck pain and left hand numbness and tingling. There were limitations with grasping, handling, fingering and feeling and the claimant would be able to perform these occasionally due to left hand numbness. (Exhibit B10F, p. 6). This opinion is not fully persuasive, as it appeared to be based heavily on the subjective allegations during the evaluation, as the examiner admitted that no concurrent medical records were reviewed. (Exhibit B10F, p. 6). The findings are significantly inconsistent with the progress notes, documenting conservative, routine management of his back, shoulder, and knee symptoms. This is also inconsistent with imaging demonstrating no significant worsening since the prior period, with generally "mild" degenerative spine and joint findings, contrary to allegations of worsening pain in these areas. Further, this opinion does not use terminology to describe the claimant's maximum capacity for these activities, as "moderate" and "severe" are nonspecific with regard to duration throughout a normal workday.

(Tr. 21)

Di Loreto argues that Dr. Davidson's opinion was supported by his examination findings, as well as objective evidence (i.e., a 2019 MRI). Doc. No. 8 at 12. Di Loreto also asserts that the ALJ erred in finding that Dr. Davidson's opinion was inconsistent with progress notes, documenting conservative, routine management of his symptoms. Id. Di Loreto asserts that the medical records showed increasing dosages of Duloxetine for pain (Tr. 350, 497), swelling of his right knee (Tr. 389), crepitus of the knee (Tr. 418, 420), and a limping gait (Tr. 499), knee injections (Tr. 389), and a knee

14

aspiration (Tr. 389).  Finally, Di Loreto also argues that the ALJ should have obtained clarification from Dr. Davidson if the words "moderate" and "severe" were unclear or, in the alternative, that this Court should adopt the Seventh Circuit's definition of "moderately limited."  Doc. No. 8 at 13-14.

The ALJ found that Dr. Davison's opinion was (1) inconsistent with "progress notes, documenting conservative, routine management of his back, shoulder, and knee symptoms;" (2) inconsistent with "imaging demonstrating no significant worsening since the prior period, with generally 'mild' degenerative spine and joint findings" and (3) was less persuasive because it was based on a "one-time examination, including subjective input from the claimant."  (Tr. 21)

In finding that Di Loreto's "conservative, routine" treatment conflicted with Dr. Davidson's opinion, the ALJ notes that Di Loreto managed his back and joint symptoms with a home exercise program; a prescription non-steroid anti-inflammatory drug; occasional steroid injections and a knee aspiration; and chiropractic manipulation. (Tr. 20, 21). The ALJ pointed out that there was "no indication claimant was involved in additional physical therapy during the period at issue" and "no evidence that his orthopedic specialist recommended surgical intervention for his spine or joint impairments."  (Tr. 21)  Thus, the ALJ made a reasonable determination that Di Loreto engaged in only conservative treatment. See SSR 16-3p (March 28, 2016) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (finding that minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment ... during the relevant time period."); *Lester v. Soc. Sec. Admin.,* 596 F. App'x 387,

15

389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment); *Smith v. Comm'r of Soc. Sec. Admin.,* 564 F. App'x 758, 763 (6th Cir. 2014) (finding that improvement after taking prescribed medication supports a denial of disability benefits) (citing *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987)).  Di Loreto does not point to evidence he received treatment beyond the conversative measures the ALJ addressed.

The ALJ also found that "imaging demonstrating no significant worsening since the prior period, with generally 'mild' degenerative spine and joint findings" also contradicted Dr. Davidson's opinion.  (Tr. 21)  In arguing that the ALJ erred, Di Loreto points to a 2019 MRI as evidence of worsening knee arthritis. Doc. No.  8 at 12.  Di Loreto suggests the MRI supports a worsening of his symptoms because the 2019 MRI showed evidence of right knee arthritis and prior objective findings were limited to the left knee (Id.)  Lisa Schnell, PA ordered the March 2019 MRI over concerns that Di Loreto's continued pain "in spite of conservative care" might suggest a "medial meniscal tear." (Tr. 20, 389) Shortly thereafter, Roman Hanycz, PA reviewed the MRI results with Di Loreto and noted some thickness loss, fissures, small osteochondral bodies, a moderate-sized joint effusion, and a small edge radial tear. (Tr. 20, 388)  PA Hanycz also noted that Di Loreto was able to flex his knee and was provided with a prescription NSAID.  (Id.) PA Hanycz also suggested Di Loreto return before his upcoming trip to Mexico if he needed more medication or a cortisone injection. (Id.)  Di Loreto returned a few weeks later asking for a knee aspiration. (Tr. 20, 387) However, PA Hanycz and Dr. Keppler determined there was not enough effusion to aspirate. (Id.) It was also noted that the NSAID helped and Di Loreto was provided with "another box to get him through his trip." (Id.)  The ALJ addressed the MRI results in detail in the opinion, noting that Di Loreto "was able to flex his knee adequately" and that only conservative treatment was recommended in response to the MRI results.

16

The ALJ also discussed other imaging results including a 2021 left knee x-ray revealing mild tricompartmental osteoarthritis of the left knee and lumbar spine imaging revealing mild degenerative changes and normal alignment. (Tr. 21) And a 2018 spinal MRI that noted mild degeneration of the cervical spine with severe left and moderate right foraminal stenosis at C6-7. (Tr. 20)  The ALJ determined that the mild findings on the imaging tests did not support the limitations opined by Dr. Davidson. Di Loreto has not demonstrated that the ALJ erred in this determination.

In assessing Dr. Davidson's opinion, the ALJ also relied on the opinions of Dr. Das and Dr. Mikalov whom the ALJ found generally persuasive and consistent with a prior ALJ's findings on an earlier application filed by Di Loretto.[3] (Tr. 22, 126, 132-33, 141-42). In September and December 2020, respectively, Dr. Elizabeth Das and Dr. Abraham Mikalov both found Di Loreto could engage in occasional lifting, carrying, pushing and pulling 20 pounds; frequent lifting, carrying, pushing, and pulling 10 pounds; standing and/or walking six hours in an eight-hour workday; and sitting for six hours in a workday; could frequently balance; occasionally climb stairs/ramps, stoop, kneel, crouch, and crawl; never climbing ladders, ropes, or scaffolds; and  reaching overhead occasionally with his right arm (Tr. 132-33, 141-42.) Drs. Das and Mikalov had the opportunity to review Di Loreto's medical records prior to issuing an opinion including the review and consideration of Dr. Davidson's report. In contrast, as the ALJ pointed out, Dr. Davidson's opinion was based on a "one-time examination" that involved no review of the medical records. (Tr. 21, 128, 138 [Evermed CE Report, Dr. Davidson's employer).  SSA regulations provide that an ALJ should consider "length of treatment" and "frequency of visits" when considering medical opinions. 20 C.F.R. § 404.1520c. Thus, in assessing persuasiveness, the ALJ concluded that Dr. Davidson's was less persuasive because he did

_____

[3] The ALJ notes that *Drummond* could not be applied because at the time of the initial and reconsideration of the application related to this opinion, Di Loretto's prior application review was still pending with the District Court. (Tr. 22)

not have a longitudinal view of Di Loreto's medical history. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)(ALJ entitled to give preference to doctor who had access to the entire medical record over the opinion of a doctor who worked only from her personal examination." ). The ALJ also discounted the opinion, in part, because it was based largely on Di Loreto's subjective complaints. *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013)(ALJ properly discounted the opinion of the treating physician, in part, because it "appeared to be based primarily on [claimant's] subjective complaints...."). Therefore, in weighing Dr. Davidson's opinion, the ALJ gave proper consideration to the length of treatment and reliance on subjective complaints

The ALJ's opinion also identified other evidence that contradicted with Dr. Davidson's limitations. For example, the ALJ states that in a March 2019 visit Di Loreto admitted he had been engaging in "an active lifestyle with home exercise program and swimming three to four times per week" and that Di Loreto's "ability to travel out of the country in 2019 suggested his capacity for standing, walking, and sitting were significantly less limited than currently alleged." (Tr. 20, 21) *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."); *Wood v. Comm'r of Soc. Sec.*, No. 2:18-CV-1098, 2019 WL 3543087, at *8–10 (S.D. Ohio Aug. 5, 2019), *report and recommendation adopted*, No. 2:18-CV-1098, 2019 WL 4193361 (S.D. Ohio Sept. 4, 2019) (finding that ALJ properly discounted plaintiff's credibility by "specifically consider[ing]" plaintiff's "conservative mental health treatment and improvement of symptoms with such treatment," and "activities of daily living.").

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir.

18

2009). The Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Based on all of the above, the ALJ's decision to discount Dr. Davidson's opinion was supported by substantial evidence and in accordance with agency regulations.  Therefore, the Commissioner's decision should be affirmed.

**B.  PT Grospitch Opinion**

Di Loreto also argues that the ALJ erred in his assessment of the opinion of physical therapist, William Grospitch.  Doc. No. 8 at 14-15.  Di Loreto contends that the ALJ "cherry picked" evidence when he only gave partial credit to PT Grospitch's Opinion.  Id.  The Commissioner argues that the ALJ's decision should be affirmed because the ALJ applied correct legal standards and the decision is supported by substantial evidence.  Doc. No. 10 at 17.

In reviewing PT Grospitch's opinion, the ALJ stated the following:

The undersigned is persuaded in part by the opinion of William Grospitch, PT, a physical therapist who performed a comprehensive functional capacity evaluation at the request of the claimant's primary care physician on July 9, 2021. During that examination, the claimant presented with the ability to perform within the light range of exertional activity, occasionally lifting and carrying "up to 25 pounds," and "frequently" performing standing, walking, sitting, postural maneuvers, and manipulative functions. This is

19

generally consistent with the progress notes, demonstrating mild degenerative changes on imaging, managed with relatively conservative treatment. Mr. Grosspitch (sic) stated, "Although I feel he could function in the light demand category, I do not think he would be able to tolerate a full workday and especially not multiple full work days in succession." Aside for the claimant's subjective presentation during that examination wherein he requested breaks throughout the testing activities, the evaluating therapist did not provide any further evidentiary basis or support for his conclusion that the claimant could not sustain a workday or workweek.

(Tr. 21-22) Thus, the ALJ adopted much of Grospitch's opinion but found that Grospitch's statement that he did not think Di Loreto "would be able to tolerate a full workday and especially not multiple full work days in succession" was unpersuasive because it lacked support.

Di Loreto argues that the ALJ's determination requires remand because Grospitch's opinion was supported by the examination and consistent with medical records. In particular, Di Loreto points (1) to the fact that Di Loreto took frequent breaks through the exam caused by his back fatigue and knee pain and (2) the medical records were consistent with the opinion that Di Loreto could not work full-time. Doc. No. 8 at 14-15.

As the ALJ noted, PT Grospitch appears to base his opinion that Di Loreto would not be able tolerate a full-work day or a succession of workdays on Di Loreto's pain and frequent rest breaks. (Tr. 21-22, 510)  This is because the results of the Functional Capacity Exam indicated Di Loreto "demonstrated an ability to function in the Light Physical Demand Level…for an 8 hour workday." (Tr. 21-22, 510) Thus, as the Commissioner notes, Grospitch's "report was internally inconsistent stating that Plaintiff could work a full workday and could not complete a full workday." Doc. No. 10 at 18; *See Cobb v. Colvin,* No. CV 15-73-GFVT, 2016 WL 5400364, at *3 (E.D. Ky. Sept. 26, 2016)(finding ALJ properly ignored statement contradicted by doctor's own physical examination.) Due to the internal inconsistency in Grospitch's report, the ALJ determined that Grospitch's opinion that Di Loreto could not sustain full-time work was based on Di Loreto's subjective pain complaints and his need for rest. The ALJ determined that this evidence did not provide sufficient support for Grospitch's determination

20

that Di Loreto could not sustain work. The ALJ is permitted to discount a medical opinion for the reasons that it appears to be "based primarily on [claimant's] subjective complaints....". *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013). Moreover, the evidence the ALJ relied to discount Dr. Davidson's opinion, applies equally to the discounting of Grospitch's decision that Di Loreto could not sustain full-time work and the Court's analysis from that section is incorporated herein. Thus, the ALJ relied on substantial evidence to support his determination to discount the portion of Grospitch's opinion regarding his ability to sustain  full-time employment.

In addition, the Court notes that SSA regulations provide that Grospitch's determination that Di Loreto could not sustain work is "not a medical opinion as described in the regulations," but rather an "opinion[ ] on issues reserved to the Commissioner,' namely an assessment of the ability to work" and, therefore, the ALJ need not give special significance to such a statement. *Andres v. Commissioner*, 733 F. App'x 241, 244 (6th Cir 2018) (citations and quotations omitted); *see also* 20 C.F.R. § 416.927(d)(1)(Opinions "that are dispositive of a case; *i.e.,* that would direct the determination or decision of disability" are not given "any special significance.")*; Quisenberry v. Commissioner*, 757 F. App'x 422, 431 (6th Cir. 2018) ("[N]o special significance will be given to source of an opinion—such as whether a claimant is disabled or unable to work—reserved to the Commissioner[.]"); *Cosma v. Commissioner*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [a physician's] opinion because her conclusion that [plaintiff was] totally disabled is a determination reserved to the Commissioner[.]"); *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012)("[T]he regulations specifically exclude from consideration opinions on certain issues, such as conclusory statements that a claimant is disabled or unable to work."); *Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007)(finding ALJ properly rejected conclusion that claimants back pain was "disabling.").

Based on all of the above, the ALJ did not err in discounting the portion of PT Grospitch's opinion that Di Loreto could not sustain full-time work.[4]

## VII.    CONCLUSION

For all of the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Dated:  February 22, 2023                          *s/ Jonathan Greenberg*
                                                      Jonathan D. Greenberg
                                                      United States Magistrate Judge

---

[4] Di Loreto also asserts that the following items documented in the medical records were consistent with Grospitch's opinion that Di Loreto could not work full-time:  Swelling, crepitus, tenderness in his knees; tenderness in his cervical and lumbar spine, and a limping gait.  Doc. No. 8 at 15.  However, it is unclear how the evidence of swelling, crepitus, tenderness, and limping support an opinion that a person could not sustain work full-time. Further, the findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

22